IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: FAH LIQUIDATING CORP. (f/k/a FISKER AUTOMOTIVE HOLDINGS, INC.), *et al.*,<br><br>                Debtors. | Chapter 11<br>Bank. No. 13-13087 (KG)<br>Jointly Administered |
| EMERALD CAPITAL ADVISORS CORP., in its capacity as Trustee for the FAH Liquidating Trust,<br><br>                Plaintiff,<br>v.<br>BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,<br><br>                Defendant. | Adv. No. 15-51898 (KG)<br><br>Misc. No. 17-160 (GMS) |

## MEMORANDUM

### I. INTRODUCTION

Bayerische Motoren Werke Aktiengesellschaft ("BMW"), defendant in the above-captioned adversary proceeding, moves this court (D.I. 1) ("Motion for Leave") for leave to appeal the Bankruptcy Court's interlocutory decision, *Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In re FAH Liquidating Corp.)*, 572 B.R. 117 (Bankr. D. Del. 2017) ("Decision"), granting in part and denying in part BMW's motion to dismiss the adversary proceeding. For the reasons stated below, the court will deny the Motion for Leave.

### II. BACKGROUND

#### A. The Agreements

According to the Complaint, this dispute arises from agreements between BMW, a corporation organized under the laws of the Federal Republic of Germany, and Fisker Automotive, Inc. (together with Fisker Automotive Holdings, Inc., "Debtors"). (*See* Adv. D.I. 1).[1] Debtors were founded in

---

[1] The docket of the Chapter 11 cases, *In re FAH Liquidating Corp.*, Case No. 13-13087 (KG) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The docket of the adversary proceeding, *Emerald Capital Advisors Corp. v. Bayerische Motoren Werke Aktiengesellschaft*, Adv. Pro. No. 15-51898 (KG) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

2007 to design, assemble, and manufacture premium plug-in hybrid electric vehicles. (Bankr. D.I. 3 at ¶ 5). Around October 2011, Debtors were developing the "N" or "Nina Platform" to launch their second vehicle, the Atlantic sedan. (*Id.* at ¶ 18). Debtors entered into supply and service agreements with third parties including BMW. In April 2011, the parties entered into a development agreement "for the installation of BMW N26B20 engines with parts and components into a Fisker Nina vehicle . . . for the purpose of securing the project's milestones with the view of the conclusion of a final Purchase, Supply and Development Agreement." (Adv. D.I. 6 at Ex. A). The parties also entered into a supply agreement (together with the development agreement, the "Agreements") for "the supply of BMW N20B20 engines [], other standard BMW powertrain and chassis parts and components . . . for use in the Nina." (*Id.* at Ex. B, ¶ 1.1).

The Agreements obligated Fisker to pay BMW for its services in three tranches: (1) €150,000 at signing, (2) €250,000 "after successful engine start up in vehicle and test bench" and (3) €300,000 on September 30, 2011. (*Id.* at Ex. A, ¶ 6.2). Among other services required under the development agreement, BMW was obligated to develop and deliver six prototype N26B20 engines and related parts. (*Id.* at Annex 3). Pursuant to the supply agreement, Debtors were required to pay three upfront, yearly installments of €22 million for a total of €66 million to BMW for expanding its production capacity as needed to manufacture 515,000 engines. (*Id.* at Ex. B, App. 5). The upfront payments were to cover BMW's "structural invest[ment], machining, tooling, [and] development costs" and were to be paid to BMW "regardless of the actual volumes attained." (*Id.* at ¶ 5.2.1). In 2012, the parties amended the Supply Agreement and modified the upfront payment schedule to reflect Debtors' reduced forecast for production needs. (*Id.* at Ex. C, App. 5, ¶ 5.2.1). The new schedule identified Debtors' first €22 million payment made in 2011, relieved Debtors of their payment in 2012, and obligated Debtors to make payments of €7.5 million in 2013, €6.25 million in 2014, €5 million in 2015, and €1.25 million in 2016. (*Id.*)

2

B. **The Complaint**

The Complaint alleges that Debtors made five wire transfers in the total amount of $32,579,798.87 (collectively, the "Transfers") between June 30, 2011 and April 9, 2012. BMW acknowledges that Debtors made all three tranche payments required under the development agreement on June 30, December 20, and April 4, 2011. (Adv. D.I. 15 at 7). BMW identifies the July 29, 2011 payment as the upfront payment of €22 million required under the supply agreement. On November 22, 2013, Debtors filed for relief under Chapter 11. In May of 2014, Debtors rejected the Agreements with BMW. (Bankr. D.I. 932). On July 28, 2014, the Bankruptcy Court confirmed Debtors' plan of liquidation (Bankr. D.I. 1137). Under the plan, Debtors assigned to a liquidating trust ("Trust") all estate causes of action, including any actions against BMW. (*See id.* at Art. IV.L). On November 19, 2015, the Trust filed its complaint seeking to recover from BMW the $32.5 million in Transfers. (Adv. D.I. 1). The Complaint alleges that BMW did not manufacture or deliver any engines pursuant to the Agreements or otherwise give any value in exchange for the Transfers. (*Id.* at ¶ 16). The Complaint seeks to recover the Transfers under various theories, including: avoidance, recovery, and turnover of certain of the transfers as constructively fraudulent under §§ 542, 548, and 550 (Counts I, III, and IV); avoidance of the transfers as constructively fraudulent under § 544(b)(1) (Count II); and unjust enrichment (Count V).

C. **The Motion to Dismiss**

BMW moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6), made applicable to the adversary proceeding by Bankruptcy Rule 7012(b). (Adv. D.I. 15). BMW argued generally that, based on the Debtors' rejection of the contract, Debtors are deemed to be in breach of the contract under § 365(g)(1), cannot allege substantial performance, and therefore cannot bring suit under the Agreements. (*Id.* at 1). Because Trustee did not seek to avoid the Agreements themselves as fraudulent transfers, and now seeks to avoid discrete payments under the contract, BMW alleges,

3

"[t]he entire action is an end-run around the rules of contract law, attempting to obtain by avoidance what the Trustee could not obtain by suing under the contract itself." (*See id.*) BMW further argued the fraudulent transfer action must be dismissed because "payments made under a valid contract are, by definition, payments for reasonably equivalent value." (*Id.* at 1). BMW further asserts that, based on Trustee's allegation that the parties had a written contract, Trustee cannot proceed on an unjust enrichment theory as a matter of law. (*Id.* at 3).

On June 13, 2017, the Bankruptcy Court issued the Decision granting in part and denying in part BMW's motion to dismiss. The Bankruptcy Court dismissed Trustee's claims under § 544 (Count II), concluding that German law, as the applicable non-bankruptcy law, did not provide a remedy. *FAH*, 572 B.R. at 130. The Bankruptcy Court further dismissed Counts I, III, and IV to the extent of $31,786,216.13, ruling that all but $793,761.87 of the transfers were made outside of the applicable statutory period. *Id.* at 128. The Bankruptcy Court denied the motion to dismiss with respect to the remaining $793,761.87 on the basis that Trustee had adequately alleged that the Debtors received less than reasonably equivalent value in exchange for the Transfers. *Id.* Finally, the Bankruptcy Court denied the motion to dismiss with respect to the unjust enrichment count. *Id.* at 131. The Bankruptcy Court noted that it had previously allowed claims for unjust enrichment to proceed where the debtor might be left with no other legal remedy; here, Trustee had a plausible legal remedy, in form of constructive fraudulent transfer claim, for only $793,761.87 of the Transfers made within the 2-year look back period, and not for the remaining $31,786,216.13 in payments: "Trustee has brought the adversary proceeding to recover more than $32.5 million that Debtors transferred to [BMW] for what appears to be little or nothing. It remains unclear what, if anything, Debtors received in return for the payments. Trustee has some viable claims." *Id.* at 131. BMW seeks leave to appeal the Decision, arguing that the Bankruptcy Court erred in failing to dismiss all claims.

4

D.  **Discovery**

At a hearing on April 26, 2017, counsel for Trustee suggested that, "mindful of the cost" of litigation, it may never have filed this lawsuit if BMW had simply explained what it did with the money. (*See* Adv. D.I. 37, 4/26/17 Hr'g Tr. at 18:22-19:1 ("And the reason it took so long for this proceeding to be filed was we said this really doesn't have to be too complicated . . . If [BMW] used the thirty-three million dollars, there is no litigation. And we have enough things going on, we don't need another litigation.") BMW disputes Trustee's representation, stating that it "has no record of any representative of the Trustee (or of the Debtors) contacting anyone at BMW about this matter prior to filing the complaint." (Adv. D.I. 51). Based on Trustee's representation, however, BMW subsequently moved for a case management order that would establish "a two-phased [discovery] approach, in which the second phase may never become necessary":

> In the first phase, BMW AG would produce to the Trustee (subject to entry of an adequate confidentiality order) spreadsheets summarizing its expenditures on the Fisker project from 2011 through 2013 (which were prepared contemporaneous to the project, and will show that BMW AG expended *substantially* in excess of the €22.7 million Fisker paid) and the underlying invoices (for the purchase of machinery, tools, and the like for the build-out of production capacity) from which the summaries were prepared. Following that production, BMW AG would produce (in Germany) a Rule 30(b)(6) designee for deposition on the subject of its Fisker expenditures. The proposal would not curtail the Trustee's right to seek additional discovery after phase one, nor BMW AG's right to oppose additional discovery. At the conclusion of phase one, the parties should be in a position to either dispose of or resolve the case amicably or, potentially, via summary judgment. Upon completion of the first phase, the Trustee would reserve all of its rights to persuade the Court that a second, general phase of discovery was warranted.

(*Id.* at 4-5). The parties later stipulated to a phased discovery process, which was approved by the Bankruptcy Court on October 31, 2017. (Adv. D.I. 53). In connection with the phased discovery process, the docket reflects the parties' most recent agreement that BMW will endeavor to make a Federal Rule of Civil Procedure 30(b)(6) designee available for deposition on a mutually convenient date on or before June 30, 2018. (Adv. D.I. 59).

5

## III. APPLICABLE STANDARDS

The Court may, in its discretion, grant leave to parties in bankruptcy to appeal interlocutory orders. *See* 28 U.S.C. § 158(a)(3). In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal. *See In re SemCrude, L.P.*, 407 B.R. 553, 556-57 (D. Del. 2009); *In re Magic Rests., Inc.*, 202 B.R. 24, 25 (D. Del. 1996). Under section 1292(b), leave to file an interlocutory appeal may be granted when the order at issue: (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness and, (3) if appealed immediately, the resolution may materially advance the ultimate termination of the litigation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Leave may be denied for reasons apart from these specified criteria, including due to the state of the appellate docket or the desire to have a full record before considering the disputed legal issue. *See id.*; *see also SemCrude*, 407 B.R. at 557. Piecemeal litigation is generally disfavored by the Third Circuit. *See In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988). The party seeking leave to appeal an interlocutory order must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989).

## IV. DISCUSSION

### A. Controlling Question of Law

The court is not convinced that this matter involves a controlling question of law. "A 'controlling question of law' includes every order which, 'if erroneous, would be reversible error on final appeal.'" *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 622 n.5 (D. Del. 2011) (quoting *Katz*, 496 F.2d at 755). As the Third Circuit has explained, "controlling" means serious to the conduct of the litigation, either practically or legally." *See Katz*,

6

496 F.2d at 755. BMW merely argues that the Decision, if deemed erroneous, would constitute reversible error on final appeal and that "[t]he questions can be decided on the pleadings alone, accepting well-pled facts as true for purposes of Rule 12(b)(6), and reversal of the Decision on those two counts would dispose of the action." (*See* D.I. 1 at 10). Conversely, Trustee argues that the two counts at issue —Trustee's claim for fraudulent transfer and its unjust enrichment claim — are wholly independent of one another, with no overlapping question of law (controlling or otherwise) between them. (D.I. 2 at 4). "If the Bankruptcy Court committed reversible error with respect to the fraudulent-transfer claim on the question of reasonably equivalent value (which it did not), the Trustee's unjust-enrichment claim would be unaffected; the converse would be true if reversible error were found with respect to the claim for unjust enrichment." (*Id.* at 5).

Trustee's claim for fraudulent transfer, as narrowed by the Decision, covers substantially less of the amount transferred to BMW than its unjust enrichment claim, which implicates the full amount of the Transfers (approximately $33 million). The court agrees that reversal on the unjust enrichment claim would leave Trustee with a viable claim for fraudulent transfer (albeit in a reduced amount), and vice versa. In either case, a colorable claim would remain to proceed to discovery. Thus, neither of the legal questions is "controlling" within the meaning of the relevant test, as neither would be "serious to the conduct of the litigation" between Trustee and BMW, which would continue unaffected as to the other, legally independent claim. *Katz*, 496 F.2d at 755.

**B.      Substantial Ground for Difference of Opinion**

"A party's disagreement with the court's ruling does not constitute 'a substantial ground for difference of opinion' within the meaning of [§] 1292(b)." *Hurst v. City of Dover*, 2006 WL 2347707, at *2 (D. Del. Mar. 21, 2006). "The difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (internal quotations omitted). Moreover, "[t]he difference of opinion must be legally significant (*e.g.*, multiple courts disagree as to the applicable legal standard.)"

7

*SemCrude*, 2010 WL 4537921, at *3 (internal citation omitted). This factor may also be met if "the bankruptcy court's decision is contrary to well-established law." *Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entm't Grp.)*, 209 B.R. 832, 837-38 (D. Del. 1997).

### 1. Reasonably Equivalent Value

Counts I, III, and IV of the Complaint turn on Trustee's allegation that the payments constituted constructive fraudulent transfers under § 548 of the Bankruptcy Code. To survive a motion to dismiss, Trustee was required to allege facts showing that "Debtors received less than reasonably equivalent value in exchange for the Transfers." *See FAH*, 572 B.R. at 127. The Bankruptcy Court stated that where a Trustee states a claim for constructive fraud, under Federal Rule 8(a) pleading requirements, "[a]ll that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent." *Id.* (citing *In re DVI, Inc.*, 2008 WL 4239120, at *9 (Bankr. D. Del. Sept. 16, 2008)). "[D]isputes as to the actual value of the transfer or value given in exchange for the transfer do not need to be decided on a motion to dismiss so long as 't[h]e Trustee has identified the transfer by date and face amount and has alleged that it was for no consideration.'" *Id.* (citing *DVI*, 2008 WL 4239120 at *8)).

Based on Trustee's allegations that (i) the Transfers at issue were made pursuant to the Agreements, and (ii) BMW did not manufacture or deliver to Debtors the engines required under the Agreements or otherwise provide any value to Debtors or their estate, the Bankruptcy Court concluded that "Trustee has adequately alleged the second element of a [§] 548 claim for constructive fraud, that Debtors received less than reasonably equivalent value in exchange for the Transfers." *Id.* On this basis, the Bankruptcy Court allowed Counts I, III, and IV to proceed to discovery, but only to the extent of $793,761.87 made within the two-year look back period. The Bankruptcy Court noted: "Finding the element sufficient upon a motion to dismiss does not constitute a ruling on the merits, and as such the Court notes that the issue of 'reasonably equivalent value is a fact intensive

8

determination that typically requires testing through the discovery process.'" *Id.* at 127-28 (citing *In re Charys Holding Co.*, 443 B.R. 628, 638 (Bankr. D. Del. 2010)).

"A court's fundamental inquiry in the Rule 12(b)(6) context is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Charys*, 443 B.R. at 631 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982). Seeking leave to appeal the interlocutory Decision, BMW argues that, with respect to each of the Transfers, the Debtors received reasonably equivalent value "as a matter of law." Therefore, BMW argues that Trustee is not "entitled to offer evidence" to support the claim that the Debtors received less than reasonably equivalent value in exchange for the $32 million in transfers, regardless of whether BMW performed a single act under the Agreements. The court finds no substantial ground for a difference of opinion on the correct standard, as such a *per se* rule is not supported by the cases cited and would conflict with the factually driven test set forth by the Third Circuit.

The Third Circuit has made clear that the question of value is per se one of fact, not law, and this not susceptible to determination on a Rule 12(b) motion. *See e.g., In re Green Field Energy Servs.*, 2015 WL 5146161, at *8 (Bankr. D. Del. Aug. 31, 2015) ("[t]he Third Circuit requires the application of a 'totality of the circumstances' test in determining whether reasonably equivalent value was exchanged for a transfer. The test includes considerations of factors such as market value, good faith, and whether the transaction was at arm's length") (citing *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 153 (3d Cir. 1996). "Given the wide number of variables to consider, and the less stringent pleading requirements of Rule 8(a)(2) to constructive fraud claims, '[t]he issue of 'reasonably equivalent value' ***requires a factual determination that cannot be made on a motion to dismiss***." *Id.* (emphasis added) (citing *EPLG I, LLC v. Citibank, N.A. (In re Qimonda Richmond, LLC)*, 467 B.R. 318, 327 (Bankr. D. Del. 2012);

9

*Charys*, 443 B.R. at 638 (reasonably equivalent value is fact intensive determination typically requiring testing through discovery). Consistent with well established law, the Bankruptcy Court rejected BMW's request to determine reasonably equivalent value at the pleading stage.

BMW argues that courts consistently hold that a debtor receives reasonably equivalent value as a matter of law in exchange for payments made to satisfy a contractual obligation, and that the Bankruptcy Court's decision conflicts with "every other decision" on the issue. (D.I. 1 at 13-14). The loan repayment cases cited by BMW are factually distinguishable and do not create substantial grounds for a difference of opinion that the Third Circuit's totality of the circumstances test must be applied. BMW cites *In re Crucible Materials Corp.*, 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012), where the bankruptcy court explained that "[w]hen the transfer to a creditor is in dollar-for-dollar satisfaction of an antecedent debt, there can be no claim for constructive fraudulent transfer." *Id.* at *8 (citing *In re Aphton Corp.*, 423 B.R. 76, 89 (Bankr. D. Del. 2010). "This is because the goal of fraudulent transfer law is the preservation of the estate against diminution and a payment which reduces a debt dollar-for-dollar does not diminish the estate." *Id.* *Crucible* is factually distinguishable, as it concerned payments made to retire a bond. Here, BMW did not lend the Debtors money, and the Transfers were not in satisfaction of a loan. *See also Charys*, 443 B.R at 638. *Crucible* did not involve an allegation of non-performance by the non-debtor party. Here, the complaint alleges that Debtors received nothing for $33 million in Transfers. *Crucible* does not create a genuine doubt that Trustee may test reasonably equivalent value through discovery.

BMW concedes in its argument that the principle that "a debtor receives reasonably equivalent value as a matter of law in exchange for payments made to satisfy a contractual obligation" is "often applied in loan obligation cases," but argues that the principle "applies with equal force to any contract." (D.I. 1 at 14). In support, BMW cites *In re Central Illinois Energy Cooperative*, 521 B.R. 868 (Bankr. C.D. Ill. 2014), which involved an agreement to construct a grain handling facility.

10

There, the debtor agreed to assume a third-party's obligation for making progress payments to the contractor, and the chapter 7 trustee later sought to avoid the debtor's payments. The bankruptcy court concluded that because the debtor was contractually obligated to pay the contractor, its "transfer of funds in satisfaction of its own debt is not constructively fraudulent." *Id.* at 873. *Central Illinois* concerned no allegation that the non-debtor party failed to perform construction on the facility and was also decided on summary judgment, and not at the motion to dismiss stage.

BMW also cites *Treasure Valley*, another case outside of this circuit, which concerned a contract for construction of wood pellet production plant. (D.I. 1 at 15 (citing *In re Treasure Valley Opportunities, Inc.*, 166 B.R. 701 (Bankr. D. Idaho 1994)). There, the contract required five installment payments, including "15% with receipt of order" and "15% on submittal of approval drawings." *Id.* at 702. The debtor made two payments totaling $54,667, but the contract was subsequently canceled due to the debtor's default. The trustee sought to recover the payments as fraudulent transfers, contending that the debtor "received virtually nothing," thus there was no reasonably equivalent value. *Id.* The bankruptcy court concluded that reasonably equivalent value was received based on two benefits – "(1) discharge of the [debtor's] obligation to pay [the non-debtor contractor] under the contract terms, and (2) property in the form of the continued vitality of the contract" – and that "the second benefit [i]s decisive in this case." *Id.* at 704. "By making the payments, the debtor obtained a contractual interests capable of being sold to a third party." *Id.* According to BMW, "[t]hat is precisely the situation here." (*See* Adv. D.I. 1 at ¶ 15). While the court agrees that *Treasure Valley* has a similar factual background, the court cannot conclude that this one case creates substantial grounds for a difference of opinion that Trustee is entitled to offer evidence on reasonably equivalent value. Notably, the bankruptcy court's determination in *Treasure Valley* was based on uncontroverted evidence at the summary judgment phase, and the case did not involve an allegation that no work was performed under the contract. Simply put, the court does not find the

11

cases cited by BMW create substantial doubt as to the correct standard and that the Third Circuit's totality of the circumstances test should apply to a determination of reasonably equivalent value.

### 2. Unjust Enrichment

"To state a claim for unjust enrichment sufficient to obtain restitution, the Trustee must allege five elements: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of a justification, and (5) the absence of a remedy provided by law.'" *FAH*, 572 B.R. at 130 (citing *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citations omitted)). In determining whether to dismiss the unjust enrichment claim, the Bankruptcy Court determined that the Complaint included allegations that BMW received a benefit – the Transfers – at the expense of the Debtors, and the argument is that it would be "against the fundamental principles of justice or equity and a good conscience" for BMW to retain the Transfers. *Id.* (citing *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (internal quotations and citations omitted)). With respect to the fifth factor – absence of a remedy at law – BMW had argued that "the contractual relationship between [Debtors] and [BMW] bars the Trustee from recovering on an unjust enrichment theory." (Adv. D.I. 15 at 25). "A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." (*Id.* (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009)). "As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract." (*Id.* (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (internal citation omitted)).

Because the Bankruptcy Court had already determined to dismiss Trustee's claims to the extent of a vast majority of the Transfers at issue – with only $793,761.87 of the total $32,579,798.87 Transfers remaining – the Bankruptcy Court declined to dismiss Trustee's unjust enrichment claim at the pleading stage, finding that the unjust enrichment claim was "significant because it keeps alive the claim for the entire amount which Trustee has placed at issue, namely, $32,579,798.87." *FAH*,

12

572 B.R. at 131. The Bankruptcy Court cited its prior holding in *Green Field* that a claim for unjust enrichment can survive a motion to dismiss where it is plausible that the plaintiff's other claims may fail and leave the plaintiff without a remedy at law. *Id.* (citing *Green Field*, 2015 WL 5146161 at *10). The Bankruptcy Court rejected BMW's argument that the contractual relationship barred recovery because, at the pleading stage, it was entirely acceptable to pursue alternative theories, even where the claims are for breach of contract and for unjust enrichment. *Id.* (citing *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) and *Pedrick v. Roten*, 70 F. Supp. 3d 638, 653 (D. Del. 2014)).

BMW argues that leave to appeal is appropriate as the Bankruptcy Court's decision is contrary to well established law and conflicts with cases holding that an unjust enrichment count tied to contractual payments cannot lie, as there is no "absence of a remedy provided by law." (*See* D.I. 1 at 11-13). BMW distinguishes the cases relied on by the Bankruptcy Court and Trustee, in which unjust enrichment claims were permitted to proceed, arguing that in each case no underlying contract governed the claim.[2] BMW argues that the Bankruptcy Court should have looked instead to *Reed v. Zipcar, Inc.*, 527 F. App'x 20 (1st Cir. 2013). The plaintiff in Zipcar was a member of a car-sharing service, and was twice charged a $50 hourly late fee, in accordance with the membership agreement, for late return of the rental car. *Id.* at 21. Plaintiff brought a putative class action against the service, asserting, *inter alia*, an unjust enrichment claim on the basis that the late fees were disproportionate and exceeded those of comparable firms. *Id.* The unjust enrichment claim was dismissed under Rule 12(b)(6), and the First Circuit affirmed dismissal of the claim, observing that "litigants may not

---

[2] BMW argues that that *Green Field* does not support the Bankruptcy Court's decision because the unjust enrichment claims in that case did not arise from a pre-existing contract; rather, at issue was a debtor's written waiver of a $200 million business opportunity that allowed entities controlled by one of the debtor's board members to benefit. *Green Field*, 2015 WL 5146161 at *3-*4. BMW argues that there was no underlying contract between the debtor and the insider's entities governing the business opportunity in that case, and it is therefore inapposite. BMW argues that the Bankruptcy Court's reliance on *Lass* is also erroneous. (*See* D.I. 1 at 12-13). In *Lass*, the First Circuit permitted the unjust enrichment claim to proceed because the contract governing the parties' relationship did not address the payments at issue in the lawsuit. Here, BMW argues, the complaint alleges that all of the relief sought by Trustee falls directly under the Agreements therefore *Lass* is inapposite. (*See id.* at 13).

13

override an express contract by arguing unjust enrichment." *Id.* at 24 (internal quotations omitted). Citing *Zipcar*, BMW argues "the allegations here are no different" – "Count V is a claim that [BMW] was 'unjustly enriched' by its receipt of contract payments due to it under written contracts. The Trustee cannot escape the contracts by resorting to equity." (D.I. 1 at 13). Plaintiff in *Zipcar* did not allege that she received no services, and in dismissing the unjust enrichment claim at the pleading stage, the court specifically noted "the existence of an adequate remedy at law." *Id.* at 22.

Regarding the "absence of a remedy provided by law" requirement for an unjust enrichment claim, BMW argues that Trustee is not permitted an "end-run" around this requirement based on the Debtors' rejection of the Agreements in the bankruptcy proceedings. According to BMW, a debtor may hardly reject contracts and then pursue a theory of unjust enrichment based on the absence of the contracts. (*See* D.I. 1 at 11-12). Here, as BMW argues, there are indeed contracts – they have merely been rejected, and the rejection of a contract is not a termination. (*See id.*) Thus, the Debtors' rejection of the Agreements does not alter the conclusion that because express contracts governed the Transfers, Trustee may not pursue an unjust enrichment theory, even where no other legal remedy may currently exist. In support of this argument, BMW cites cases standing for the general rule that a debtor's rejection of a contract constitutes a breach, not a termination or rescission. (*See* D.I. 1 at 12). BMW cites no cases applying this principle in the context of dismissal of an unjust enrichment claim at the pleading stage where all other legal remedies are, or may become, foreclosed.[3]

---

[3] The cases cited by BMW include statements that rejection is not recission or termination but shed no light on this issue. BMW cites *ANC Rental* which states "rejection of a contract in bankruptcy is not a termination, but merely a pre-petition breach." (D.I. 1 at 12(citing *In re ANC Rental Corp.*, 324 B.R. 228, 233 (Bankr. D. Del. 2005)). *ANC Rental* considered an objection to an administrative claim based on a termination fee, which the bankruptcy court ultimately sustained, holding that there was no termination. BMW also cites *Taylor-Wharton* for its statement that rejection does not undo past performance. (*See* DI. 1 at 12). Prior to the petition date, the debtor in that case entered into a purchase agreement under which it assumed all liabilities relating to accidents occurring after the closing date caused by seller's products. *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, *1 (Bankr. D. Del. Nov. 23, 2010). Following debtor's bankruptcy filing, the debtor rejected the purchase agreement and argued that it had no liability to injured claimants. *Id.* The court noted that § 365 of the Bankruptcy Code provides that "the rejection of an executory contract . . . of the debtor constitutes a breach of such contract" — not the rescission. *Id.* at *3. Because debtor's assumption of seller's liabilities was complete upon the purchase agreement closing (at which time state law attached making debtor liable for the seller's torts), enforceability of the liability provision was unaffected by the debtors' later rejection. *See id.*

14

The Bankruptcy Court held that Trustee may plead unjust enrichment in the alternative. *FAH*, 572 B.R. at 131. Trustee cites several cases holding that Federal Rule 8(d) "permits Plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs may only recover under one of these theories." (*See* D.I. 2 at 9 (quoting *Viera v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009).[4] Trustee argues that, at bottom, BMW's argument is that, "the Bankruptcy Court's [decision] conflicts with decisions of other courts" and that BMW's argument falls short of the applicable standard for leave to appeal. For purposes of evaluating the Motion to Dismiss, "it is not sufficient that the relevant case law is 'less than clear' or allegedly 'not in accord' or that there is a 'strong disagreement amount the parties." (D.I. 2 at 9-10 (quoting *In re Enron Corp.*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006) (footnotes omitted)). The court agrees. Here, there is no dearth of opinion on the issue, and the mere "existence of a small number of bankruptcy court opinions to the contrary – especially opinions based on reasoning which the bankruptcy court has already determined is unpersuasive – does not create a 'substantial doubt' that the Court's opinion was correct." *In re Lehman Bros.*, 2014 WL 3408574, at *2 (S.D.N.Y. June 30, 2014). While BMW may ultimately prevail in its argument, it cites no authority addressing whether an unjust enrichment claim may proceed to discovery, where a governing contract was rejected in bankruptcy, where it is plausible that the plaintiff's other claims may fail and leave the plaintiff without a remedy at law. The Bankruptcy Court's determination that Trustee may plead in the alternative is also well supported by case law. BMW has failed to demonstrate a genuine doubt

---

[4] *See also Szymczak v. Nissan N. Am. Inc.*, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) ("Plaintiff's alternative claims for breach of contract and for unjust enrichment can and should survive to discovery, and pursuant to Rule 8(d)(2), will not be dismissed for having been pleaded in the alternative")); *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010) ("Though some cases suggest that a plaintiff's mere allegation of an enforceable contract is enough to prevent him from even ***pleading*** an alternative claim for unjust enrichment, that position cannot be reconciled with the text of Rule 8(d)") (footnote omitted); *Sheinman Provisions, Inc. v. Nat'l Deli*, 2008 WL 2758029, at *4 (E.D. Pa. July 15, 2008) ("Courts in this district have permitted plaintiffs to pursue alternative theories of discovery based on breach of contract and unjust enrichment, even where the existence of a contract would preclude recovery for unjust enrichment.")

as to the correct legal standard or that the Decision is contrary to well-established law, rendering interlocutory review of this issue inappropriate.

C.  **Advancement of the Litigation**

According to BMW, "reversal at this threshold stage would end the litigation, thereby avoiding costly and potentially protracted pretrial proceedings, and obviating the need for a trial." (D.I. 1 at 16). BMW further argues that "[d]iscovery here is likely to impose substantial cost and burden on both parties, as the relevant documents and information are located in Germany (or elsewhere abroad) and were prepared in the German language." *Id.* Additionally, "[m]ost, if not all, of the relevant witnesses are also located in German and are native German speakers." Thus, "[r]eview of the [Decision] now, which can be done on the pleadings alone, will avoid the expenditure of tremendous resources of the bankruptcy estate, movant, and the judiciary." *Id.* Conversely, Trustee argues that permitting BMW to pursue an immediate appeal would not materially advance the ultimate termination of Trustee's claims; rather, "granting the Motion is likely only to complicate the litigation currently consolidated before the Bankruptcy Court – causing the discrete dispute between the Trustee and BMW to spread to multiple fronts in differing venues." (D.I. 2 at 10). The court agrees with Trustee. "Although [the movant] asserts that determining this issue now would save time and avoid having to resolve other factual and legal matters, [it] has not sufficiently established an urgency that sets this case apart from the typical case."). *See Magic Rests.*, 202 B.R. at 26. Here, the parties are proceeding in phased fact discovery process regarding the Transfers, and appeal now would not advance the litigation and is likely only to increase piecemeal litigation.

D.  **Exceptional Circumstances**

Finally, a party seeking leave to appeal an interlocutory order must also establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Del. & Hudson Ry.*, 96 B.R. at 473. BMW argues that the court should

16

entertain the appeal now because, by reversing immediately, the court "will prevent the [Decision] from adversely impacting capital formation in the start-up industry." (D.I. 1 at 9). According to BMW, if the decision is not reversed, "in the future no established firm would contract with a start-up." *Id.* Trustee argues BMW has offered no evidence in support of its prediction, and even if possible, BMW "identifies no reason why an appeal is justified *now* (rather than following a final order)." (D.I. 2 at 13). The court agrees with Trustee. "Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *DeLalla v. Hanover Ins.*, 2010 WL 3908597, at *3 (D.N.J. Sept. 30, 2010). The court is not persuaded that there are exceptional circumstances here justifying immediate appeal.

V. **CONCLUSION**

For the reasons explained above, the Court will deny the Motion for Leave. A separate Order will be entered.

June 11, 2018

UNITED STATES DISTRICT JUDGE